IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 29, 2020

## JUSTICE BALL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 14-06091    Glenn Ivy Wright, Judge**

_____

### No. W2019-02239-CCA-R3-PC

_____

The Petitioner, Justice Ball, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions for especially aggravated kidnapping, carjacking, employing a firearm during the commission of a dangerous felony, and evading arrest and his effective fifteen-year sentence.  On appeal, the Petitioner contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claim.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Rosalind Elizabeth Brown, Memphis, Tennessee, for the appellant, Justice Ball.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's convictions result from his involvement in the carjacking and kidnapping of Muhammed Ceesay as the victim was driving home from work. *State v. Justice Ball*, No. W2016-01358-CCA-R3-CD, 2017 WL 2482996, at *1 (Tenn. Crim. App. June 7, 2017), *perm. app. denied* (Tenn. Oct. 5, 2017).  The victim's car stalled at a stop light, and two men approached the car.  One man struck the victim in the face with a gun, and both men demanded money from the victim.  The two men then climbed into the backseat of the victim's car, continued to strike him, and instructed him to drive to an ATM to retrieve more money.  The assailants instructed the victim to stop the car because they saw two "friends," the Petitioner and his codefendant, Kennith Kimble.  The victim said

that the Petitioner sat in the front seat of the car while the codefendant sat in the back. The victim testified that the Petitioner never struck or said anything to the victim, but that the codefendant took the gun from one of the men and struck the victim repeatedly. The victim drove to an ATM located at a gas station. The victim explained to the men that he would not be able to withdraw cash from the machine, and the first gunman struck the victim and caused the victim to fall out of the car. The victim was able to run away and call the police, while the men drove away in the victim's car. As police pursued the victim's stolen car, the Petitioner jumped from the car and ran. An investigator retrieved the victim's cell phone from the stolen car, and a latent print expert testified that the Petitioner's left palm print was found on the victim's phone. *Id.* at \*1-2.

After being taken into custody, the Petitioner gave a statement to police, which was entered into evidence at trial. A transcript of the statement was entered into evidence at the post-conviction hearing. In his statement, the Petitioner told police that he was walking home when he saw men he knew in a green car. The Petitioner said he "flagged them down" and got into the car. The Petitioner explained that he was sitting in the backseat behind the passenger and that the victim was seated in the middle of the backseat. The Petitioner said that the driver reached behind the seat and used his fist to hit the victim in the mouth.

In his statement, the Petitioner said that someone in the car stated that they planned to take the victim to an ATM and that they drove to an ATM at a gas station. He said one of the men asked the victim for the victim's PIN, and the victim began crying. He said the man told the victim to "shut up" and "backhanded" the victim in the mouth. The Petitioner said that one of the men exited the car, pulled the victim out of the car, and then tried to force the victim to enter his PIN into the ATM. He said the victim told the men that he needed to go into the store to retrieve money, and that the men got back into the car and left the victim at the gas station.

In his statement, the Petitioner said that he asked the men to take him home and that a police car with flashing lights appeared behind their car. The Petitioner said that he suggested the driver stop and take the ticket and that the Petitioner would not say anything about the victim. The Petitioner said that the driver kept going and that the Petitioner began punching the driver in the back of the head in an attempt to force the driver to stop the car. The Petitioner said that, eventually, the police forced the driver of the car to pull over, and that, as the car stopped, the Petitioner jumped out of the car and ran into the nearby woods. The Petitioner said he left the woods and walked up to an unmarked police car. He said that as he was attempting to explain he was one of the men who ran from the car, more police arrived, and he was arrested. The Petitioner stated that he was not responsible for the incident because he did not know that the three other men involved had kidnapped the victim and attempted steal money from the victim.

Following a joint trial with the codefendant, a jury convicted the Petitioner, who presented no proof, of especially aggravated kidnapping, carjacking, employing a firearm during the commission of a dangerous felony, and evading arrest. The jury was unable to reach a verdict regarding the codefendant's charges. *Id.*

The Petitioner appealed his trial convictions. He did not obtain relief on appeal, and our supreme court denied his application for permission to appeal. *Id.* at \*1. The Petitioner then filed a pro se post-conviction petition alleging that he had received the ineffective assistance of trial counsel. Post-conviction counsel was appointed and filed two amended petitions.

At the post-conviction hearing, the Petitioner testified that trial counsel convinced him not to testify at trial. The Petitioner agreed that the trial court asked twice if the Petitioner wanted to testify and that each time he said yes. However, the Petitioner said he did not testify. The Petitioner explained that counsel asked for a recess after the Petitioner stated that he wanted to testify and persuaded the Petitioner not to testify. The Petitioner said that counsel told the Petitioner that he was going to argue "inconsistencies" in his closing argument. The Petitioner explained that counsel discussed inconsistencies in testimony regarding the number of people in the car and the victim's identification of the Petitioner. The Petitioner said that counsel was going to argue that the victim's testimony was not accurate, specifically that the victim did not adequately identify the Petitioner. The Petitioner said he told counsel that he wanted counsel to argue about inconsistencies in the Petitioner's statement. The Petitioner explained that he was not truthful in his initial statement to the police. The Petitioner said that he misstated the number of people in the car and the names of the people in the car.

The Petitioner testified that he was tried alongside the codefendant, who testified that he was not involved in the incident and that he did not know the Petitioner. The Petitioner confirmed that he did not know the codefendant until the Petitioner met him at their joint trial and that the codefendant was not involved in the incident. The Petitioner said that he told trial counsel and the defense investigator the names of the people who participated in the carjacking: Moses Stepheny, Malik Pounds, "T.J.," and "Big Darius" Pollok. The Petitioner said the victim failed to identify Mr. Pounds in a photograph lineup before trial. The Petitioner stated that Mr. Pounds was present for the carjacking and that Mr. Pounds's handprint was found on the car, but that the victim did not remember Mr. Pounds's involvement in the incident. The Petitioner said that the victim also failed to identify Mr. Stepheny in a photograph lineup.

The Petitioner testified about the details of the carjacking. The Petitioner stated that while he walked down the street, he saw a car with a window rolled down. The Petitioner said he recognized a masked face through the window so he flagged down the driver, and he got into the car. The Petitioner stated that he got in the car with Mr. Pollok, Mr. Pounds,

Mr. Stepheny, T.J., and the victim because the Petitioner needed a ride home. The Petitioner explained that the victim was seated between Mr. Pollok and Mr. Pounds. He stated that he did not know who the victim was when he got into the car and that he did not know the car was stolen. The Petitioner said he heard one of the passengers say that he was planning to take the victim to an ATM. He explained that they arrived at a gas station, and Mr. Pollok pulled the victim out of the car. The Petitioner stated that Mr. Pollok hit the victim because the victim did not enter his code into the ATM. The Petitioner said that they left the victim at the gas station and drove away in the car.

The Petitioner testified that a few minutes after leaving the gas station, a police car drove up behind their car. The Petitioner said he encouraged the driver to stop the car, but the driver refused and told the Petitioner that the car was stolen. The Petitioner said that this was when he realized the car was stolen. The Petitioner said he began hitting the back of the driver's head because he wanted the driver to let him out of the car. The Petitioner said that eventually the car stopped and that they each began exiting the car. The Petitioner explained that he ran from the police but came back and walked up to the police. The Petitioner said he was taken to the police station where he gave a statement. He explained that he did not name the individuals in the car because he thought that they were friends. The Petitioner said that as they were leaving the gas station, he picked up a cell phone. The Petitioner said that the victim was seated between two men in the backseat of the car and that one of the men dragged the victim out of the car when they reached the gas station. The Petitioner said that at trial, the victim testified that the victim was driving the car and escaped from the car. The Petitioner stated he did not realize that a robbery was occurring until the victim was pulled from the car. The Petitioner said that on the day of the robbery, he wore blue basketball shorts, white shoes, and no shirt. He said that one of the officers testified the Petitioner was wearing grey jeans on the day of the incident and that the victim never identified the Petitioner after the incident. The Petitioner said that this was the testimony he would have offered at trial had trial counsel not pressured him into not testifying. The Petitioner also said that counsel omitted specific points from closing argument that the Petitioner had asked him to include.

On cross-examination, the Petitioner testified that he wanted trial counsel to impeach the victim on the basis that the victim said the Petitioner was seated in the front passenger seat when the Petitioner said he was seated in the backseat. The Petitioner agreed that the victim testified at the trial that the people in the back of the car struck the victim in the head and pointed a gun at the victim. The Petitioner said that in the weeks before trial, he had discussed with counsel whether he would testify and what the Petitioner would say if he testified. The Petitioner said he agreed that the decision would be made during the trial after the State's proof. The Petitioner agreed that after the State's proof, he and counsel discussed the Petitioner's desire to testify. He also agreed that before the trial, he had discussions with counsel about whether to testify. He said that after the State's proof at the trial, counsel advised him that the victim's testimony was not particularly harmful to

the Petitioner and that counsel could argue the Petitioner was not criminally responsible. He said counsel informed him that the Petitioner would be asked "tough questions" about his previous police statement if he testified and that counsel believed, strategically, it was better for the Petitioner not to testify. The Petitioner agreed that he took counsel's advice and told the trial court that after speaking with counsel, he did not wish to testify. The Petitioner acknowledged that his palm print was found on the victim's cell phone.

On redirect examination, the Petitioner testified that after the State's proof, trial counsel advised him that the trial court did not like the Petitioner, that the Petitioner's testifying would hurt the defense, and that counsel would argue everything the Petitioner requested. The Petitioner explained that he agreed not to testify because counsel was going to argue what the Petitioner wanted him to argue during his closing argument, but counsel failed to do so.

Trial counsel testified that he represented the Petitioner at the trial and on the appeal of the convictions. Counsel stated that he did not want to impeach the victim because he believed the victim's testimony was favorable to the Petitioner. Counsel explained that the victim's testimony was more damaging for the Petitioner's codefendant. Counsel stated that the victim's version of events was more favorable to the Petitioner than the Petitioner's version of events. Counsel said that the victim testified that his car with the men stopped near the Petitioner, who then got into the car, sat in the front seat, did not have a weapon, and did not strike the victim. Counsel argued at the trial that mere presence alone was insufficient to convict the Petitioner and that the men sitting in the backseat were the more active participants in the crime than the ones in the front seat. Counsel explained that he could not argue identity at the trial because the Petitioner admitted to being in the car, the victim identified the Petitioner, and the Petitioner's palm print was found on the victim's phone. Counsel said that he had filed a motion to suppress the victim's admission to police that he was in the car but that the motion to suppress was denied. Counsel also challenged the validity of the victim's identification based on a photograph lineup, but the trial court denied relief regarding this issue.

Counsel testified that the best defense strategy at the trial was to argue that the Petitioner was not criminally responsible. Counsel stated that he also considered the Petitioner's statement to police, which was contradictory to what the Petitioner would have testified to at the trial. Counsel said he was concerned that the jury would question the Petitioner's credibility after hearing the Petitioner's testimony that contradicted his statement to police. Counsel stated that he advised the Petitioner that the decision to testify belonged solely to the Petitioner. Counsel denied telling the Petitioner that the trial judge did not like the Petitioner. Counsel stated that he made a tactical decision not to argue certain inconsistencies in his closing argument because he believed this was the best way to achieve justice for his client.

In its order denying relief, the post-conviction court found that the Petitioner was aware of his constitutional right to testify. The court found that after reviewing the *Momon* hearing at the trial, the Petitioner knew he had a right to testify, knew he could refuse to testify, had consulted with trial counsel before making a decision, had been advised of the advantages and disadvantages of testifying, and had waived his right to testify. The court found that counsel advised the Petitioner not to testify but that counsel did not coerce the Petitioner. The court found that the record demonstrated that counsel was "extremely conscience [sic]" in representing the Petitioner. The court also found that the Petitioner's claim that counsel was ineffective for failing to argue certain inconsistencies during closing argument was without merit because the Petitioner failed to overcome the presumption that counsel's actions were sound trial strategy. The court denied post-conviction relief, and this appeal followed.

On appeal, the Petitioner contends that the post-conviction court erred in denying relief because counsel coerced the Petitioner into not testifying at the trial and presented an unsound trial strategy. The State responds that the post-conviction court did not err in denying relief. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered

. . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## I.

### Petitioner's Failure to Testify

The Petitioner contends that the post-conviction court erred in denying his ineffective assistance of counsel claim relative to trial counsel's coercing him into not testifying at the trial. The Petitioner argues that he agreed not to testify because counsel indicated that he would argue certain evidentiary inconsistencies in closing argument about which the Petitioner had wanted to testify but that counsel failed to make the arguments.

Trial counsel's testimony reflects that he advised the Petitioner against testifying as a matter of strategy and that the ultimate decision to testify belonged to the Petitioner. The Petitioner stated that he and counsel discussed whether he would testify at the trial several times, and the Petitioner agreed to wait to make a decision until after the State presented its proof. Following the State's proof, the Petitioner and counsel discussed whether the Petitioner should testify. Counsel said that based on the victim's testimony, he advised the Petitioner not to testify because he viewed the victim's testimony as favorable to the Petitioner. Counsel said that he did not coerce the Petitioner or promise to argue all of the inconsistencies the Petitioner mentioned. The post-conviction court credited counsel's testimony that he did not coerce the Petitioner and that the Petitioner voluntarily waived his right to testify. The post-conviction court concluded that the Petitioner failed to prove his claim.

Upon review, we conclude the record supports the post-conviction court's determination that the Petitioner failed to prove his claim regarding trial counsel's coercing him into not testifying and that the Petitioner voluntarily waived his right to testify. The Petitioner is not entitled to relief on this basis.

-7-

## II.

## Trial Strategy

The Petitioner contends that trial counsel's strategy was ineffective. The Petitioner argues that counsel's strategy did not provide the Petitioner with an opportunity to address any issues raised at the trial that were inconsistent with the Petitioner's memory of events. The Petitioner argues that had he testified at the trial, he would have been able to clarify his innocence.

Trial counsel testified that the victim's testimony was favorable to the Petitioner and that he advised the Petitioner against testifying. Counsel explained that the victim testified that the Petitioner was seated in the front of the vehicle, did not speak, and did not harm the victim. The victim also identified the Petitioner as being in the car, and the Petitioner's palm print was found on the victim's cell phone. Counsel said that based on the victim's testimony and the State's proof, he decided the best strategy was to argue that the Petitioner was less culpable than the other men involved in the incident. The post-conviction court credited counsel's testimony regarding his trial strategy of relying on the victim's favorable testimony and arguing that the Petitioner was not criminally responsible. The record supports the post-conviction court's denial of relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE